Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 2692 | DATE | 4/8/2004 |
| CASE TITLE | Bancinsure vs. BMB Electric Co., Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, BancInsure's motion for summary judgment is granted on its Count IV claim for unjust enrichment [#11]. Counts I, II and III are moot. BancInsure shall submit within 14 days a judgment order agreed to in form which includes prejudgment interest.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 APR -8 PH 5:36 | 4/8/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 0 9 2004

BANCINSURE, as assignee and subrogee to )
OSCEOLA BANCORPORATION d/b/a THE )
RIVERBANK, )
          Plaintiff, )
          vs. )   No. 03 C 2692
           )   Judge Joan H. Lefkow
BMB ELECTRIC CO., INC., an Illinois )
corporation and BRUCE M. BURKS, an )
Individual, )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, BancInsure Inc., as assignee and subrogee to Osceola Bancorporation d/b/a The RiverBank ("BancInsure") moves for summary judgment on its Count I (Conversion) and Count IV (Unjust Enrichment) claims brought against defendants BMB Electric Co., Inc., ("BMB") and Bruce M. Burks ("Burks") (collectively "defendants").[1] BancInsure is an Oklahoma corporation with its principal place of business in the State of Oklahoma.[2] BMB is an Illinois corporation with its principal place of business located in Illinois. Burks is a citizen of Illinois. The amount in controversy exceeds $75,000 exclusive of interests and costs. This court's jurisdiction, therefore, is invoked pursuant to 28 U.S.C. § 1332(a)(1). For the reasons set forth below,

---

[1] Count II of BancInsure's Complaint alleges common law fraud while Count III seeks relief based on a constructive trust theory.

[2] For diversity purposes, the court looks at the citizenship of the assignee, BancInsure. *See, e.g., Hartford Accident & Indem. Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir. 1988) ("As the wording of [28 U.S.C. §] 1359 indicates, if the assignment is not collusive or otherwise improper, the assignee's citizenship determines whether his suit is within the diversity jurisdiction.").

BancInsure's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Local Rule 56.1(a) provides that a motion for summary must include, *inter alia*, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." This statement of material facts "shall consist of short numbered paragraphs, including within each paragraph specific references

2

to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." BancInsure has abided by this Rule and has set forth 22 facts supported with specific citations to the record.

Part (b) of Local Rule 56.1 requires a party opposing summary judgment to file, *inter alia*, a concise response to the movant's statement of material facts. For purposes relevant here, that statement is required to include a response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Defendants have not complied with this rule. They have set forth no response to each numbered paragraph in BancInsure's statement and have not identified whether they agree or disagree with each such statement. Moreover, even when defendants apparently take issue with certain portions of BancInsure's statement of material facts, they provide no specific citations to the record in support. Because defendants did not comply with Local Rule 56.1(b), BancInsure's statement of material facts is deemed admitted. *See, e.g.*, Local Rule 56.1(b) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000); *Dimmitt & Owens Fin. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 736 (N.D. Ill. 2002).

Great Lakes Bank ("Great Lakes") is a bank authorized to transact business in Illinois. (Pl. L.R. 56.1 ¶ 6.) Osceola Bancorporation d/b/a The RiverBank ("RiverBank") is a bank authorized to transact business in Wisconsin with its principal place of business in Wisconsin. (Pl. L.R. 56.1 ¶ 7.) Osceola Medical Center ("Osceola") is a Wisconsin Company with its

3

principal place of business in Wisconsin. (Pl. L.R. 56.1 ¶ 8.) In March 2002, Osceola maintained a checking account at RiverBank. (Pl. L.R. 56.1 ¶ 9.) On or about March 15, 2002, Osceola issued check number 48887 to Kimball Midwest at P.O. Box 714048, Cincinnati, Ohio, in the amount of $71.25. (Pl. L.R. 56.1 ¶ 10.) Osceola has not issued any other check numbered 48887. (Pl. L.R. 56.1 ¶ 11.)

On or about May 9, 2002, Burks deposited a check purporting to be number 48887 drawn on Osceola's account at RiverBank (the "Check") into an account in the possession of BMB at Great Lakes. (Pl. L.R. 56.1 ¶ 12.) The Check deposited by Burks listed BMB as the payee and was in the amount of $110,636.10. (Pl. L.R. 56.1 ¶ 13.) Great Lakes presented the Check to RiverBank, which honored the check and paid. (Pl. L.R. 56.1 ¶ 14.) RiverBank deducted funds from Osceola's account to cover the Check, transferring such funds to Great Lakes. (Pl. L.R. 56.1 ¶ 15.) The Check cleared and Burks thereafter withdrew these funds from his account at Great Lakes. (Pl. L.R. 56.1 ¶ 16.) In June 2002, Osceola learned that RiverBank deducted funds from Osceola's checking account to cover the Check and reported to RiverBank that the Check was not authorized, drafted, or issued by Osceola and that Osceola's signature had been forged. (Pl. L.R. 56.1 ¶ 17.) At no time did Osceola authorize or issue the Check nor has Osceola ever authorized the transfer of funds to BMB. (Pl. L.R. 56.1 ¶ 18.) Moreover, Osceola has never conducted business with BMB nor has it ever become indebted to BMB at any time. (Pl. L.R. 56.1 ¶ 19.)

RiverBank credited Osceola's account in the amount of $110,626.10 to cover the lost funds. (Pl. L.R. 56.1 ¶ 20.) During all relevant times, BancInsure had executed and issued a financial institution bond in favor of RiverBank. (Pl. L.R. 56.1 ¶ 21.) RiverBank notified

4

BancInsure of a loss due to forgery on the Check and on or about August 6, 2002, BancInsure paid to RiverBank $100,636.10 pursuant to the bond. (Pl. L.R. 56.1 ¶ 22.) In connection therewith, RiverBank assigned all of its rights against any third parties causing or contributing to the loss to BancInsure. (*Id.*)

## DISCUSSION

Plaintiff seeks summary judgment on its unjust enrichment and conversion claims. Starting with the conversion claim,

> Under Illinois law "[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object lawfully held." *In re Thebus*, 108 Ill.2d 255, 91 Ill. Dec. 623, 628, 483 N.E.2d 1258, 1260 (1985) (quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill.App.3d 207, 65 Ill.Dec. 801, 806, 441 N.E.2d 1315, 1320 (1982)). To prevail, "[o]ne claiming conversion must show a tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute." *In re Thebus*, 91 Ill.Dec. at 628, 483 N.E.2d at 1260 (quoting *Jensen v. Chicago & W. Ind. R.R. Co.*, 94 Ill.App.3d 915, 50 Ill.Dec. 470, 474, 419 N.E.2d 578, 592 (1981)). Although money may be the subject of conversion, it must be capable of being described as a specific chattel; "an action for conversion of funds may not be maintained to satisfy a mere obligation to pay money . . . . It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 91 Ill.Dec. at 628-29, 483 N.E.2d at 1260-61 (emphasis added).

*National Union Fire Ins. Co. of Pittsburgh, PA v. Wilkins-Lowe Co., Inc.*, 29 F.3d 337, 340 (7th Cir. 1994) (brackets in original). *See also, Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989 ) ("In order to satisfy this requirement, the plaintiff must have a 'right to a specific fund or specific money in coin or bills.'") (quoting *Mid-America Fire & Marine Ins. Co. v. Middleton*, 127 Ill. App. 3d 887, 891-92, 468 N.E. 2d 1335, 1338 (1984)). An action for "conversion will not lie for money represented by a general debt or obligation." *In re Thebus*, 108 Ill. 2d at 261, 483 N.E. 2d at 1261 (citation omitted and emphasis removed).

5

BancInsure cites no case supporting a conversion claim under a factual scenario similar to that present here. Indeed, it would not appear that the defendants converted money belonging Osceola and not to BancInsure's subrogee, RiverBank. Moreover, simply because RiverBank was obligated to repay such funds when the payment was procured by fraud does not necessarily mean that the funds converted were those belonging to RiverBank. Therefore, whether an action for conversion exists under the facts in this case is not as clear as BancInsure suggests.

In any event, the court need not delve deeper into the Count I conversion claim because unjust enrichment is easily proven based on the undisputed facts. Under Illinois law "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefits violates the fundamental principles of justice, equity and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 160, 545 N.E. 2d 672, 679 (1989). There exists no reason for BMB and Burks to retain the funds conveyed to them via Burks' deposit of the Check with Great Lakes. Furthermore, retention by BMB and Burks of the funds in question violates principles of justice, equity and good conscience. Neither BMB nor Burks had any professional or commercial contacts with Osceola through which any payments were required or through which retention of the funds could otherwise be justified. Accordingly, plaintiffs motion for summary judgment on the Count IV unjust enrichment claim is granted.

## CONCLUSION

For the reasons stated above, BancInsure's motion for summary judgment is granted on its Count IV claim for unjust enrichment [#11]. Counts I, II and III are moot. BancInsure shall submit within 14 days a judgment order agreed to in form which includes prejudgment interest. It is so ordered.

ENTER: *Joan H Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 8, 2004